UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID LAHAMENDU,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>PAMELA BONDI et al.,<br><br>　　　　　Respondents. | CASE NO. 2:25-cv-02155-LK-SKV<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER AND TRANSFERRING CASE TO TACOMA |

This matter comes before the Court on Petitioner David Lahamendu's Emergency Motion for Temporary Restraining Order. Dkt. No. 2. He asks the Court to order his immediate release from custody with U.S. Immigration and Customs Enforcement ("ICE"), or alternatively, to prevent Respondents from transferring him from the Northwest ICE Processing Center in Tacoma, Washington to any other facility during the pendency of these proceedings. The Court denies his request for immediate release but grants his alternative request.

## I.　　BACKGROUND

Lahamendu is a native and citizen of Indonesia who entered the United States on or around November 28, 1993. Dkt. No. 1 at 3. He was granted voluntary departure in November 2004. *Id.* at 5. The Board of Immigration Appeals dismissed his appeal of that decision on December 20,

2004. *Id.* It appears that Lahamendu overstayed his voluntary departure period, making his order of removal final. Dkt. No. 1 at 6; *see also* 8 C.F.R. § 1241.1(f).

It seems that at some point, the Department of Homeland Security determined that Lahamendu did not present a risk of flight or danger to the community, *see* 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.4(d)(1), because on March 21, 2019, Lahamendu was placed on an Order of Supervision, Dkt. No. 1 at 5. ICE then "re-detained" him pending removal on January 26, 2025. *Id.* at 3, 5. Since that date, he has been held in custody at the Northwest ICE Processing Center in Tacoma, Washington, a privately owned and operated immigration detention facility run by private contractor GEO Group on behalf of ICE. *Id.* at 3; Dkt. No. 2 at 2.

On the evening of October 30, 2025, counsel for Lahamendu was informed by Lahamendu's wife that he "was being transferred from Northwest ICE Processing Center . . . to another facility outside of this jurisdiction." Dkt. No. 1-2 at 1–2. Shortly after 12:00 a.m. on October 31, 2025, Lahamendu filed a Petition for a Writ of Habeas Corpus naming as respondents various federal officer defendants (the "Federal Respondents") and the warden of the Northwest ICE Processing Center. Dkt. No. 1. The petition alleges that his detention violates various constitutional amendments. *Id.* "Because he has been detained for more than six months post the issuance of a final order of removal and there is no likelihood of removal in the reasonably foreseeable future," Lahamendu seeks immediate release, or alternatively, release on a reasonable bond until such time as the government removes him. *Id.* at 3, 6. His habeas petition was accompanied by his motion for a temporary restraining order ("TRO"). Dkt. No. 2.

Shortly after the motion for a TRO was filed, this Court granted provisional relief preventing Respondents from removing Lahamendu from the United States or this district without further order from the Court and ordering Respondents to file a response to the motion in accordance with Local Civil Rule 65 if the parties could not agree on a briefing schedule. Dkt. No.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER AND TRANSFERRING CASE TO TACOMA - 2

3 at 2–3. On Saturday, November 1, 2025, Federal Respondents filed a response in opposition to the TRO. Dkt. No. 5.

As of the filing of his petition, Lahamendu had been detained for 277 days. Dkt. No. 1 at 3. He alleges that he has exhausted all administrative remedies; "[t]here are no administrative appeals of the final order of removal and no other relief is otherwise available." *Id.* at 6.

## II. DISCUSSION

### A. Jurisdiction and Venue

This Court has jurisdiction over this case under 18 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 2241 (habeas corpus).

However, venue is not appropriate in this vicinage. Lahamendu filed this case in Seattle, stating that he "is detained in this judicial district." Dkt. No. 1 at 3. But that is not correct; he is "currently being held in Tacoma, Washington," where "the actions which gave rise to this Petition took place[.]" *Id.* Therefore, this case belongs in the Tacoma vicinage, not in Seattle. *See* 28 U.S.C. § 1391(e); LCR 3(e)(1). The Court will accordingly transfer this case to Tacoma.

### B. Legal Standard

Federal Rule of Civil Procedure 65 empowers the court to issue a TRO. Fed. R. Civ. P. 65(b). Like a preliminary injunction, a TRO is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (the standards applicable to TROs and preliminary injunctions are "substantially identical"). The Court will not "mechanically" grant an injunction for every violation of law. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). Instead, plaintiffs seeking a TRO must establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at

20. The mere "possibility" of irreparable harm is insufficient; instead, the moving party must "demonstrate that irreparable injury is likely in the absence of an injunction." *Id.* at 22.

The Ninth Circuit employs a "sliding scale" approach, under which the four elements are balanced "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For example, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a [TRO], so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (citation modified).

C.  **Lahamendu's Request for Release Seeks a Mandatory Injunction, While his Request for a Prohibition on his Transfer Seeks a Prohibitory Injunction**

Although individual appellate panels have questioned the usefulness of the distinction, the Ninth Circuit distinguishes between "mandatory" and "prohibitory" injunctions. *Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017). Prohibitory injunctions "aim to preserve the status quo by preventing a party from taking action," while mandatory injunctions "alter[] the status quo by requiring a party to take action and thus place[] a higher burden on the plaintiff to show the facts and law *clearly* favor the moving party." *Youth 71Five Ministries v. Williams*, 153 F.4th 704, 717 (9th Cir. 2025) (citation modified). Courts determine the status quo based on "the legally relevant relationship between the parties before the controversy arose," that is, before the action challenged in the complaint occurred. *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (emphasis omitted). Because mandatory injunctions go "well beyond simply maintaining the status quo," they are "particularly disfavored," *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980), and "should not be approved in the absence of a risk of extreme or very serious damage," *Hernandez*, 872 F.3d at 997 (citation modified). Mandatory injunctions are most likely to be appropriate when "the status quo . . . is exactly what will inflict the irreparable

injury upon complainant." *Id.* at 999 (quoting *Friends for All Child., Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830 n.21 (D.C. Cir. 1984)).

In his motion for a TRO, Lahamendu requests immediate release, or alternatively, an injunction preventing Respondents from transferring him to another detention facility while these proceedings are pending. Dkt. No. 2 at 1, 4, 7. He states that the latter request "maintain[s] the status quo," *id.* at 4, which implies that the former request (release) does not. Federal Respondents do not address this issue in their response. *See generally* Dkt. No. 5.

The Court concludes that Lahamendu's request for release seeks a mandatory injunction because it appears that his detention pending removal was uncontested until it became prolonged beyond 90 days. Dkt. No. 2 at 3;[1] Dkt. No. 2-2; *see also GoTo.com, Inc. v. Walt Disney*, Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (the status quo is "the last uncontested status which preceded the pending controversy") (citation modified). The Court finds that Lahamendu's request for a prohibition on his transfer seeks a prohibitory injunction because he has been detained in the same facility for over 277 days at this point. Dkt. No. 2 at 3; Dkt. Nos. 2-2, 2-3; *see also Ghafouri v. Noem*, No. 3:25-CV-02675-RBM-BLM, 2025 WL 2939523, at *1 (S.D. Cal. Oct. 16, 2025) (describing a TRO preventing respondents from removing petitioner from the district as preserving the status quo); *Turcios v. Oddo*, No. 3:25-CV-0083, 2025 WL 1904384, at *2 (W.D. Pa. July 10, 2025) (same).

**D.      Lahamendu's Request for Release Falls Outside the Limited Purpose of a TRO**

"Although the standard for obtaining a [TRO] and a preliminary injunction is identical, they serve fundamentally different purposes." *All. for Wild Rockies v. Higgins*, 690 F. Supp. 3d

---

[1] Lahamendu incorrectly states that "*Zadvydas* [*v. Davis*, 533 U.S. 678, 701 (2001)] recognized 90 days as a 'presumptively reasonable period' of detention after a removal order." *Id.* Instead, *Zadvydas* held that six months was a presumptively reasonable period of detention. *Zadvydas*, 533 U.S. at 701.

1177, 1185 (D. Idaho 2023). "The purpose of a [TRO] is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Id*. (citation modified). TROs are thus "restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). Preliminary injunctions, by contrast, remain in effect throughout the litigation. *Higgins*, 690 F. Supp. 3d at 1186. Thus, a TRO is not designed to replace the "thorough consideration contemplated by full proceedings pursuant to a preliminary injunction." *Id.* (quoting *Oby v. Clear Recon Corp.*, No. 216-CV-01008-MCE-CKD, 2016 WL 3019455, at *1 (E.D. Cal. 2016)).

Because Lahamendu's request for release from detention "is the same relief ultimately sought by his habeas petition, the Court concludes that it falls outside the limited purpose of a TRO and should instead be decided either after a preliminary injunction hearing or through regular adjudication of the habeas petition itself." *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2165995, at *7 (W.D. Wash. July 30, 2025); *see also Tang v. Bondi*, No. 2:25-CV-01473-RAJ-TLF, 2025 WL 2979938, at *2 (W.D. Wash. Sept. 3, 2025). "While there could be circumstances where a petitioner's detention is so obviously unconstitutional that release should be granted on an emergency basis, that is not the case here." *Nguyen*, 2025 WL 2165995, at *7. As explained further below, Lahamendu has not shown such an obvious entitlement to immediate release.

E.   **The *Winter* Factors**

In his petition, Lahamendu alleges that his detention violates the Fifth Amendment "because it is a deprivation of his liberty in violation of Due Process." Dkt. No. 1 at 5. He also asserts in conclusory fashion that his detention "violates [his] constitutional rights under the Fourth Amendment, because it is an unreasonable seizure," and the Eighth Amendment "because it is

cruel and unusual punishment." *Id.* Neither his petition nor his motion for a TRO expound upon the latter two allegations. *See generally* Dkt. Nos. 1, 2. Because these claims are legal conclusions couched as factual allegations that do not venture beyond "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the Court finds that Lahamendu has not carried his burden to show that he is entitled to injunctive relief on those claims.

The Court addresses his remaining requests for relief—i.e., for immediate release and a prohibition on transfer due to Fifth Amendment violations—below.

1.   <u>Likelihood of Success on the Merits</u>

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (citing *Campos-Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir. 1999), *superseded by statute on other grounds as recognized in*, *Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1053 (9th Cir. 2023)). Accordingly, the Supreme Court has held that "the Due Process Clause protects a[ ] [noncitizen] subject to a final order of deportation[.]" *Zadvydas*, 533 U.S. at 693–94 (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process"). The Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701. "After this 6-month period, once the [non-citizen] provides good reason to believe that there is no significant likelihood of

removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* ("And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.").

Lahamendu is a noncitizen who has been present in the United States for roughly 32 years. Dkt. No. 1 at 3. He is entitled to the protections of the Due Process Clause. *See Zadvydas*, 533 U.S. at 693. And having been detained for roughly nine months, Lahamendu's continued detention is not "presumptively reasonable." *Id.* at 701. But other than conclusory allegations that "his departure from the United States is neither imminent nor foreseeable," Dkt. No. 1 at 3, Lahamendu does not supply facts suggesting "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Nor were Federal Respondents able to offer any relevant facts in the short period of time they were given to respond: their 322-word opposition suggests that "[g]iven the overwhelming volume o[f] new habeas petitions and TRO motions currently being filed and the timeframe involved," they were unable to gather *any* facts regarding Lahamendu. Dkt. No. 5 at 1.

The petitioners in *Zadvydas* could not be removed because no country would accept them. Thus, removal was "no longer practically attainable," and the period of detention at issue was "indefinite" and "potentially permanent." *Id.* at 690–91. Here, in contrast, there is no indication that there are barriers to Lahamendu's removal to Indonesia or that he is otherwise unremovable. Without more facts, the Court cannot conclude that Lahamendu is "stuck in a 'removable-but-unremovable limbo,' as the petitioners in *Zadvydas* were." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (quoting *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 347 (2005)); *see also id.* ("It is true that Prieto–Romero's detention lacks a certain end date, but this uncertainty alone does not render his detention *indefinite* in the sense the Supreme Court found constitutionally

problematic in *Zadvydas*."); *see also, e.g.*, *Long Ton v. Noem et al.*, No. 5:25-CV-02033-SB-AGR, 2025 WL 2995068, at *3 (C.D. Cal. Sept. 3, 2025) (nine-month detention was not indefinite where petitioner failed to "identify any legal or institutional barriers to his removal"). While the length of his detention raises "serious questions," *Cottrell*, 632 F.3d at 1131, the bare record before the Court does not show that Lahamendu's detention is "so obviously unconstitutional that release should be granted on an emergency basis," *Nguyen*, 2025 WL 2165995, at *7.

    2.    <u>Irreparable Harm</u>

        a.    *Fifth Amendment Due Process Violations Relating to Prolonged Detention*

"The Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained.'" *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Hernandez*, 872 F.3d at 995). Here, Federal Respondents have not responded to Lahamendu's contention that he is suffering irreparable injury as a result of the continued restraint on his physical liberty. Dkt. No. 1 at 6; *see generally* Dkt. No. 5. However, the facts surrounding his detention are not identified in the record before the Court, and as discussed above, Lahamendu has not shown that his detention is so obviously unconstitutional that release should be granted on an emergency basis.

        b.    *The Effect of a Transfer on Lahamendu's Right to Counsel*

Lahamendu's counsel attests that Lahamendu's wife relayed a message from Lahamendu stating that he would likely be transported to another facility in the middle of the night on October 30, 2025. Dkt. No. 2 at 6; Dkt. No. 2-2. Lahamendu contends that if he is transferred to another detention facility during the pendency of these proceedings, "he will lose contact not only with his family, but also with his attorneys," which would "severely impair, if not cut, his ties with his legal

and social supports" and "limit his ability to succeed on the merits of the litigation." Dkt. No. 2 at 6. Federal Respondents do not respond to these arguments, and instead simply proclaim that the Department of Homeland Security "has broad authority under 8 U.S.C. § 1231(g) to determine the placement and transfer of detainees to appropriate detention facilities." Dkt. No. 5 at 2. Federal Respondents also do not address any impairments to the attorney-client relationship that might result from transfer in the midst of the government shutdown. *See generally* Dkt. No. 5. The Court takes judicial notice of ICE's statements on its website that the site "was last updated on September 30, 2025, and will not be updated until after funding is enacted," and that "[t]ransactions submitted via this website might not be processed and we will not be able to respond to inquiries until after appropriations are enacted." Lapse in Federal Funding Impact on ICE Website Operations Notice, https://www.ice.gov/funding-lapse (last visited Nov. 2, 2025).

The Due Process Clause of the Fifth Amendment guarantees to non-citizens the right to counsel at their own expense for immigration hearings. *See, e.g.*, *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) ("Although there is no Sixth Amendment right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal hearings."); *Colindres-Aguilar v. INS*, 819 F.2d 259, 260 n.1 (9th Cir. 1987) ("Petitioner's right to counsel . . . is a right protected by the fifth amendment due process requirement of a full and fair hearing."). The Immigration and Nationality Act ("INA") also guarantees noncitizens the right to counsel of their choosing, at their own expense, in removal proceedings. 8 U.S.C. § 1362; 8 U.S.C. § 1229a(b)(4)(A); *see also Rios-Berrios v. I.N.S.*, 776 F.2d 859, 862 (9th Cir. 1985) (the INA provisions guaranteeing counsel make explicit the Fifth Amendment due process guarantee to non-citizens' counsel of their choice at their own expense in immigration proceedings). The Ninth Circuit has upheld mandatory injunctions designed to remedy government practices when the

"cumulative effect" of such practices "was to prevent [non-citizens] from contacting counsel and receiving any legal advice." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 565 (9th Cir. 1990). Concerns regarding whether a non-citizen has adequate access to counsel can arise when (1) non-citizens are detained "far from where potential counsel or existing counsel [is] located," (2) the facility limits attorney visitation hours, (3) systems used to apprise detainees of the presence of their attorneys are inadequate, (4) non-citizens are transferred "to remote detention centers without any notice to counsel," or (5) detainees' access to telephones is limited. *Id.* at 565–67; *see also Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 878 (C.D. Cal. 2025).

Furthermore, under 28 U.S.C. § 1651(a), district courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." A court "has the inherent authority and responsibility to protect the integrity of its proceedings which [are] undoubtedly impacted" when a habeas petitioner is transferred to a detention facility outside of the district. *Ozturk v. Trump*, 779 F. Supp. 3d 462, 496 (D. Vt. 2025), *aff'd in relevant part sub nom. Ozturk v. Hyde*, 136 F.4th 382, 394 (2d Cir. 2025). Under this inherent authority, a court may order injunctive relief prohibiting the government from transferring a petitioner out of the district while habeas corpus proceedings are ongoing. *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2025 WL 2677125, at *8–9 (N.D. Cal. Sept. 18, 2025) ("Here, the Court finds that equities strongly favor Petitioner remaining in this District pending the resolution of this matter because this will expedite resolution of this matter, provide Petitioner ready access to medical and legal services, and address concerns about the conditions of her detention."); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *6–7 (N.D. Cal. Aug. 21, 2025) (same). Section 1231(g) does not trump courts' inherent authority. *See Hyde*, 136 F.4th at 395–96 (finding that the government was unlikely to succeed on its argument that judicial review was precluded because the decision regarding where to detain a noncitizen pending removal

proceedings is committed to the discretion of the Secretary of Homeland Security); *see also Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 209 (4th Cir. 2019) ("§ 1231(g) does not address transfers [of noncitizen detainees] at all," and it does not "explicitly grant the Attorney General or the Secretary of Homeland Security discretion with respect to transfers").

On the thin record before the Court, there are not adequate assurances that counsel will be able to locate her client or adequately communicate with him after transfer. This factor therefore favors the exercise of the Court's inherent authority to temporarily prevent Lahamendu's transfer.

       3.      <u>Balance of Equities and the Public Interest</u>

The final two *Winter* factors, which involve balancing the equities and considering the public interest, merge when the federal government is a party to a case. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020) (citation omitted).

       a.      *Fifth Amendment Due Process Violations Relating to Prolonged Detention*

There is a public interest in "prompt execution of removal orders," *Nken v. Holder*, 556 U.S. 418, 436 (2009), as well as a strong public interest "in upholding procedural protections against unlawful detention," as "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (citation modified); *see also Hernandez*, 872 F.3d at 996. However, the Court has very few facts before it regarding the reasons for Lahamendu's detention, and Respondents have not had sufficient time between Friday's filing and their Saturday response to gather such facts. Again, given the bare record before the Court and the fact that Lahamendu has not shown that his roughly nine-month detention is so obviously unconstitutional that release should be granted on an emergency basis, the Court requires more fulsome briefing before it can adequately assess whether the balance of equities and the public interest favor release.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER AND TRANSFERRING CASE TO TACOMA - 12

    b.  *The Effect of a Transfer on Lahamendu's Right to Counsel*

  The equities in this case favor temporarily prohibiting Respondents from transferring Lahamendu. Respondents have not persuasively shown that the requested temporary relief will pose an undue burden on their time, resources, or personnel; up until now they have chosen to detain Lahamendu in the same facility for 277 days. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (finding balance of equities favored granting a preliminary injunction where "[t]he government provide[d] almost no evidence that it would be harmed in any way by the district court's order, other than its assertion that the order enjoins 'presumptively lawful' government activity"). Keeping him there for the likely short duration of these proceedings does not impose an undue burden on Respondents. Indeed, it would be consistent with the ICE Detainee Transfers Directive No. 11022.1, which states that "[u]nless a transfer is deemed necessary by a [Field Office Director] or his or her designee," ICE "will not transfer a detainee when there is documentation to support," among other things, "[i]mmediate family within the [Area of Responsibility]" or "[a]n attorney of record . . . within the [Area of Responsibility.]" *Arroyo v. United States Dep't of Homeland Sec.*, No. SACV-19815-JGBSHKX, 2019 WL 2912848, at *3 (C.D. Cal. June 20, 2019) (quoting ICE/ERO Detainee Transfers Directive at 2–3, *available at* https://www.ice.gov/doclib/foia/policy/11022.1_DetaineeTransfers.pdf); *see also* Dkt. No. 5 at 2 (citing U.S. Immigration and Customs Enforcement, Performance-Based National Detention Standards 2011 (rev. 2016), *available at* https://www.ice.gov/doclib/detentionstandards/2011/pbnds2011r2016.pdf, which in turn states that "[d]ecisions to transfer detainees are made . . . on the basis of complete and accurate case information and principles set forth in the ICE/ERO Detainee Transfers Directive and other applicable ICE/ERO policies"). Furthermore, ensuring that Lahamendu has access to his counsel will facilitate speedy resolution of the issues presented in this case. Although the Court is cognizant

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER AND TRANSFERRING CASE TO TACOMA - 13

of the need to avoid "wad[ing] too far into micromanagement of ICE's system for detaining people pending removal," *Zepeda Rivas v. Jennings*, 504 F. Supp. 3d 1060, 1075 (N.D. Cal. 2020), any temporary burden on Respondents is outweighed by the need to ensure that Lahamendu's constitutional right to counsel is honored, *see Innovation L. Lab v. Nielsen*, 342 F. Supp. 3d 1067, 1082 (D. Or. 2018).

* * *

On balance, these factors favor imposing temporary relief preventing Lahamendu's transfer to another district, but do not favor injunctive relief requiring his release at this early juncture.

### F.     The Court Will not Impose a Bond

Rule 65 of the Federal Rules of Civil Procedure directs that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, courts have discretion as to the amount of security and may even dispense with the security requirement altogether. *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("Rule 65(c) invests the district court with discretion as to the amount of security required, if any." (citation modified); *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) ("The district court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review." (quoting *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985))). The Court has considered the relative hardships and the likelihood of success on the merits and concludes that to require any security in this case would be unjust. Thus, the Court waives the requirement of a bond.

### III. CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART Lahamendu's motion for a TRO, Dkt. No. 2, and ORDERS that Respondents and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf or in concert with them are RESTRAINED from transferring Lahamendu from the Northwest ICE Processing Center to any other detention facility during the pendency of this case, unless necessary for medical evaluation, medical isolation/quarantine, clinical care, extenuating security concerns, release, or removal. Petitioner's request for immediate release from custody is DENIED.

Counsel for the Federal Respondents are directed to immediately provide notice of this Order to the restrained parties they represent. Because Respondent Bruce Scott has not yet appeared, counsel for Lahamendu is directed to serve this Order on Scott.

This Order replaces the preliminary ex parte order issued on October 31, 2025, Dkt. No. 3, and shall remain in effect until the later of (1) 14 days from this Order or (2) the date this Court issues a written order on Petitioner's forthcoming preliminary injunction motion or motion for an order to show cause. Given that Lahamendu has not yet filed either such motion, to the extent he plans to do so, the parties are ordered to meet and confer and file a joint status report by no later than Wednesday, November 5, 2025 (1) proposing a briefing schedule, (2) indicating whether they believe a hearing is necessary, and (3) if so, stating whether they seek to present evidence at the hearing. If any party seeks to present evidence at the hearing, the parties must coordinate exhibits, witnesses, and an estimate of the time required to present the evidence, and file a status report including this information no later than three days prior to the hearing.

The Clerk is directed to transfer this case to the Tacoma Division of the U.S. District Court for the Western District of Washington.

Dated this 3rd day of November, 2025.

Lauren King
United States District Judge